SCIRICA, Circuit Judge,
concurring.
Nothing undermines democratic government more quickly than fraudulent elections. Any practice that impairs a fair process or rigs the count devalues and dilutes the vote of each citizen, including each minority citizen, who has lawfully voted. Voter fraud, including the practice of voting dead or nonresident citizens, is no stranger to Pennsylvania, especially to the City of Philadelphia. In 1937, the Pennsylvania General Assembly made a judgment that a non-voting purge law was necessary to prevent voter fraud. 25 Pa.Stat.Ann. § 623-40 (1963 & 1993 Supp.). Thirty-five years later, a three judge federal court upheld the constitutionality of Pennsylvania’s law, based on the valid state interest in protecting the integrity of the electoral process. Williams v. Osser, 350 F.Supp. 646 (E.D.Pa.1972).[1] The court held that was a policy decision the General Assembly was entitled to make. In this statutory challenge, as set forth in the court’s opinion, plaintiffs in this case failed to prove the Pennsylvania law violated Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1971-73 (1988 & 1992 Supp.), in that minority citizens “have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.” What is significant is that the concerns that led to the passage of the Pennsylvania law remain alive; as Judge Garth has noted, fraudulent voting in Philadelphia remains egregious and flagrant today.
For some time now, Congress and the state legislatures, concerned by low voting rates, have commendably sought to increase voter participation. Last year, citing a steady decline of citizen participation in federal elections (except for 1992) and the penalty imposed on non-voters by removing their names from the rolls,[2] Congress decided to promote voter registration by passing the National Voter Registration Act, 42 U.S.C.A. § 1973gg (1994 Supp.).[3] In the process, Congress sought to strike a balance between facilitating registration and preventing fraudulent voting,[4] but in the overall scheme, it *319 appears the new Act will make it more difficult for the states to cull out ineligible voters and remove them from the rolls.[5]
Like the policy decision made by the Pennsylvania legislature to deter electoral fraud, the new Act represents a policy choice by Congress to promote registration and voter participation. Absent practices that violate other statutes or the Constitution, such as unlawful discrimination, it is for the legislature to strike the balance here.

.As Judge Max Rosenn stated:
The principal state interest which the statute protects is the prevention of fraudulent voting. Maintaining voter rolls that include persons who no longer reside in a precinct, or who reside there but do not vote, conduces to fraud. Pennsylvania discovered that political operatives knowledgeable of the status of such registrants and weaknesses in the system were able to cast votes in the non-voters' names. The two-year period allows removal of the names before the political operatives can take advantage of the situation. If the period were four years instead of two, they would have greater opportunity to seize upon the registrant’s nonvoting status and defeat the purpose of the purge. Such considerations led the state legislature to change the purge period from four to two years in 1941 after considerable public concern over voting fraud. Mr. Welsh testified that the change was prompted by a suit instituted in 1940 by the Committee of Seventy, charging fraud by "phantom voters.”
Williams v. Osser, 350 F.Supp. 646, 652 (E.D.Pa.1972) (citation omitted) (footnote omitted.) Footnote 10, following this passage, stated:
The court takes judicial notice that on April 8, 1941, a Special Federal Grand Jury presentment found that there were 50,000 ineligible voters on the Philadelphia registrations lists. Of course, voting fraud was not a new problem at the time the two-year purge was enacted.
Id. n. 10 (citations omitted).

. H.R.Rep. No. 9, 103rd Cong., 1st Sess. (1993), reprinted in 1993 U.S.C.C.A.N. 105, 107; S.Rep. No. 6, 103rd Cong. 1st Sess. 17 (1993).

. It appears the Act, which applies to all federal elections, will take effect in Pennsylvania January 1, 1995.

. Congress stated the purposes of the Act as follows:
The purposes of this subchapter are—
*319 (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
(2) to make it possible for Federal, State, and local governments to implement this sub-chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
(3) to protect the integrity of the electoral process; and
(4) to ensure that accurate and current voter registration rolls are maintained.
42 U.S.C.A. § 1973gg(b).

. Under the National Voter Registration Act, persons cannot become ineligible simply by failing to vote. While directing states to make reasonable efforts to prevent fraud, the Act provides that any such state program or activity "shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote.” 42 U.S.C.A. § 1973gg-6(b)(2).